IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION
Civil Action No. 2:06-cv-04049-MJW

|  |  |
|---|---|
| CHRISTINE WINTER, | ) |
| Plaintiff, | ) |
| v. | ) |
| NOVARTIS PHARMACEUTICALS CORPORATION, | ) |
| Defendant. | ) |

**NOVARTIS PHARMACEUTICALS CORPORATION'S
REPLY SUGGESTION IN SUPPORT OF MOTION TO APPLY NEW JERSEY'S
PUNITIVE DAMAGES LAW AND TO PRECLUDE PUNITIVE DAMAGES**

Deirdre C. Gallagher (State Bar #6195451)
(dgallagher@foleymansfield.com)
  FOLEY & MANSFIELD, PLLP
  1001 Highlands Plaza Dr. West, Suite 400
  St. Louis, MO 63110
  Telephone: (314) 925-5700
  Facsimile: (314) 925-5701

Katharine R. Latimer (*admitted pro hac vice*)
(klatimer@hollingsworthllp.com)
Robert E. Johnston (*admitted pro hac vice*)
(rjohnston@hollingsworthllp.com)
  HOLLINGSWORTH LLP
  1350 I Street, N.W.
  Washington, DC 20005
  Telephone: (202) 898-5800
  Facsimile: (202) 682-1639

*Attorneys for Defendant Novartis Pharmaceuticals Corporation*

Two courts handling cases involving Aredia® and Zometa® have already addressed the identical issue before this Court – whether the choice-of-law analysis explicated in the Restatement (Second) of Conflict of Laws (1971) ("Restatement") requires the application of New Jersey punitive damages law. *Meng v. Novartis Pharms. Corp.*, No. L-7670-07MT, 2009 WL 4623715 (N.J. Super. Ct. Law Div. Nov. 23, 2009) (Exhibit 1 to NPC's Suggestion in Supp. of Mot. to Preclude Punitive Damages ("NPC's Opening Brief"), ECF No. 39); *Deutsch v. Novartis Pharm. Corp.*, 723 F. Supp. 2d 521 (E.D.N.Y. 2010). Those courts both held that New Jersey law applied to the issue of punitive damages because the conduct relevant to the requests for punitive damages – if it did occur – was based in or originated from New Jersey, where Novartis Pharmaceuticals Corporation ("NPC") is headquartered, while the plaintiffs' home states and place of injury governed liability for compensatory damages. Despite agreeing that the Restatement is also applicable here, plaintiff essentially ignores these two directly on point decisions. Rather than analyzing the merits of NPC's legal arguments, plaintiff instead cited numerous irrelevant cases that fail to address the issue before this Court, *i.e.*, which state's law should govern *punitive damages* after a punitive damages choice-of-law analysis. Finally, plaintiff conceded that New Jersey law, if applicable, would preclude punitive damages in this case.

**I.     Plaintiff Cites No Legitimate Basis For Ignoring Previous Holdings In This Litigation Involving The Identical Choice-Of-Law Analysis For The Application Of Punitive Damages.**

Plaintiff does not dispute that, pursuant to the Restatement, the doctrine of depecage has been "adopted in Missouri," meaning that different jurisdictions' law can govern different aspects of the same case. Plaintiff's Suggestion in Opposition to NPC's Mot. to Preclude Punitive Damages Law 8, ("Pl's Opp'n"), ECF No. 75. Despite that concession, plaintiff

contends that the law of Missouri necessarily applies to *all* damages choice of law analyses, regardless of where the bad acts or omissions allegedly giving rise to punitive damages occurred. Pl's Opp'n 5-9. In addition to plaintiff's failure to cite to any legal support for ignoring Missouri's admitted application of the depecage doctrine, plaintiff's argument ignores the long line of cases – including those examining the identical allegations of corporate conduct by NPC supposedly giving rise to punitive damages in this case – that have held that the punitive damages law of the state where a corporate defendant's principal place of business is located governs the application of punitive damages. *See, e.g.*, *Meng*, 2009 WL 4623715; *Deutsch*, 723 F. Supp. 2d 521.

Not surprisingly, plaintiff dismisses the *Meng* and *Deutsch* rulings as "wrongly decided" and "not compelled" by state law. Pl's Opp'n 5. But plaintiff failed to explain any legitimate basis – because there is none – for ignoring those rulings. Plaintiff first claims that the *Meng* decision (issued in 2009) was "wrong" based on comments by a different New Jersey state court judge during a 2006 *pretrial conference* in the unrelated Vioxx litigation. Pl's Opp'n 5 (citing Exhibit 4 to Pl's Opp'n). That different New Jersey judge, however, held that no conflict existed between New Jersey punitive damages law and that of plaintiffs' home states because "[t]here's hardly any difference" and "they're pretty much the same. They're very similar. There's really no differences." *See* Exhibit 4 to Pl's Opp'n at 119:5 & 119:25 – 120:2. Here, plaintiff has admitted that there is a conflict between Missouri and New Jersey punitive damages law. *See* Pl's Opp'n 9-10 (stating that "[n]either the state where Novartis is incorporated, Delaware, nor where Plaintiff lives, Missouri has a prohibition on punitive damages against pharmaceutical companies" and noting that New Jersey law is "contrary to Missouri law."). Therefore, whatever a different judge said during a 2006 pretrial conference in unrelated litigation cannot possibly be

2

relevant to the *Meng* court's 2009 choice-of-law analysis concerning the application of punitive damages in circumstances that are identical to those present in this case.

Next, plaintiff ignores the 2010 *Deutsch* decision while citing a 1996 case that does not even mention, let alone analyze, the doctrine of depecage and its application to a punitive damages choice-of-law analysis. Pl's Opp'n 5 (citing *Kramer v. Showa Denko, K.K.*, 929 F. Supp. 733 (S.D.N.Y. 1996)). Not only was *Deutsch* decided fourteen years after *Kramer*, but it involved an in-depth analysis of the identical issue facing this Court – *i.e.*, the application of the depecage doctrine to the application of punitive damages in this case. Plaintiff's contention that the *Meng* and *Deutsch* courts' analyses of the identical punitive damages issues were "wrong" or contrary to law is simply incorrect, and plaintiff has failed to articulate any basis to disregard their rulings.

Plaintiff's futile attempt to undermine the *Meng* and *Deutsch* holdings is necessary because she raises many of the same arguments that those courts specifically rejected when addressing nearly identical choice-of-law issues. First, plaintiff discusses the events at issue that occurred in Missouri. Pl's Opp'n 4. NPC does not dispute that Ms. Baldwin's residence and treatment in Missouri supports the conclusion that Missouri law applies to her *underlying claims* for compensatory damages. NPC merely asserts that, as the *Meng* court has already recognized, the location of the injury "bears almost no relationship to the issue of punitive damages." *Meng*, 2009 WL 4623715, at *4.

Plaintiff lards her Opposition with numerous unsupported allegations of alleged wrongdoing, but focuses the discussion on the facts of the compensatory tort claims as occurring in Missouri, rather than on the location of alleged corporate misconduct. *See, e.g.*, Pl's Opp'n 1-2. If there were any corporate misconduct that could possibly support a punitive damages claim,

3

it would be corporate-level acts or omissions involving FDA reporting, drug development, drug labeling, and marketing that was based in or originated from NPC's offices in New Jersey.

*Meng* and *Deutsch* involved the same allegations that plaintiff makes here, namely, that "NPC failed to inform medical providers [in plaintiffs' home states] of certain risks associated with" the drug at issue. *Meng*, 2009 WL 4623715, at *5. Plaintiff's bald assertion that NPC "directed its products and its behavior and its misstatements into Missouri" cannot withstand scrutiny. *See* Pl's Opp'n 11. NPC's communications regarding Aredia® and Zometa® originated from New Jersey, based on marketing materials developed in New Jersey and drug labeling approved by the FDA based on data provided by NPC from New Jersey. The communications were dispersed to the medical and dental community as a whole through the warnings that accompanied Aredia® and Zometa®, the Dear Doctor letters sent to all oncologists and dentists, and NPC's other efforts to educate the medical community as a whole. They were no more directed to doctors and dentists in Missouri than to treating physicians in the other 49 states.

In addressing these identical allegations, the *Meng* court concluded that because "[p]laintiffs' claims stem from [NPC's] business activities in New Jersey regarding the marketing, distributing, and selling of Zometa®" and NPC's "interactions with the FDA and the medical and dental community similarly originate from [NPC's] corporate headquarters in New Jersey," New Jersey law applied to punitive damages. *Id.* at 5. The *Deutsch* court reached an identical conclusion: "[B]ecause the relevant conduct at issue took place primarily in New Jersey, and not New York, New Jersey law on punitive damages is applicable under the New York choice of law analysis." *Deutsch*, 723 F. Supp. 2d at 525-26. This Court should so hold as well.

That NPC is incorporated in Delaware is equally irrelevant. Plaintiff does not ask this

4

Court to apply Delaware law nor does she cite any authority to support the notion that Delaware's role as the state of incorporation reduces the importance of New Jersey's interest in whether punitive damages are awarded in this case. Moreover, "[a]s between a corporation's principal place of business and place of incorporation, decisional law places more weight on a corporation's place of business in applying choice of law reasoning." *Meng*, 2009 WL 4623715, at *5; *see also Aguirre Cruz v. Ford Motor Co.*, 435 F. Supp. 2d 701, 707 n.4 (W.D. Tenn. 2006). The defendant here is NPC, NPC is based in New Jersey, and New Jersey is the epicenter of corporate decision-making regarding Aredia® and Zometa®. These are the most relevant facts for the purpose of a punitive damages analysis.

Finally, plaintiff argues, without citing any legal authority, that Missouri law should apply to punitive damages because liability and punitive damages are "inseparable and interwoven." Pl's Opp'n 9. This contention not only lacks legal support, but also ignores that courts often separate these issues by bifurcating the liability and punitive damages portions of trial. *See* Fed. R. Civ. P. 42(b); *see also, e.g.*, *In re Prempro Prods. Liability Litig.*, 586 F.3d 547, 553 (8th Cir. 2009) (bifurcating trial with liability determined first and punitive damages second).

## II. Plaintiff Cites Unpersuasive Cases, Which Do Not Apply A Punitive Damages Choice-Of-Law Analysis.

Plaintiff relies on cases that are unpersuasive and irrelevant to the punitive damages choice-of-law analysis. Pl's Opp'n 5-13. For instance, plaintiff contends that "Ms. Baldwin states an even stronger case for the application of Missouri law than the Plaintiff in *Goede v. Aeroject General Corp.*, 143 S.W.3d 14 (Mo. Ct. App. 2004)." Pl's Opp'n 6. *Goede* did not involve a claim for punitive damages, but rather the completely different analysis of which state's law compensatory damages law should apply. 143 S.W.3d at 24. In this case, all parties

agree that Missouri law on compensatory damages applies.  The only relevance the *Goede* decision has to this case is its affirmation of NPC's contention that the doctrine of depecage "is perfectly permissible and, according to leading commentators, quite appropriate" in certain circumstances.  143 S.W.3d at 25 (citations omitted).

The other choice-of-law cases plaintiff cited are similarly irrelevant to the issue at hand.  In *Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477 (Mo. Ct. App. 2010), the court examined whether a Missouri statute applied to the determination of fee restrictions for plaintiffs' mortgages.  *Id.* at 494.  Like *Goede*, *Mitchell* did not involve punitive damages nor analyze which state's punitive damages law should apply.  *Nelson v. Hall*, 684 S.W.2d 350 (Mo. Ct. App. 1984) similarly fails to discuss punitive damages, though the court's admission that "the state where the tort was committed may not be the state with the superior interest in such an issue as the amount of damages a jury may return on the cause of action" is at least consistent with NPC's contention that New Jersey's interest is greater than Missouri's with respect to the application of punitive damages.  *Id.* at 352 (citation omitted).  *Hicks v. Graves Truck Lines, Inc.*, 707 S.W.2d 439, 442-45 (Mo. Ct. App. 1986) was a property damage claim that did not involve a claim for punitive damages.  Finally, *Stricker v. Union Planters Bank, N.A.*, 436 F.3d 875, 878 (8th Cir. 2006) was a loan default case that did not involve claims for punitive damages.  None of these cases mentioned the doctrine of depecage or its application to a punitive damages analysis.

Plaintiff incorrectly contends that the United States Supreme Court has allegedly "reject[ed]" the notion that the doctrine of depecage can properly be used to apply one state's compensatory damages law and another's punitive damages law in the same case.  Pl's Opp' 10.  The cases plaintiff cites do not support her contention and are irrelevant.  In *Philip Morris USA*

6

*v. Williams*, 549 U.S. 346, 353 (2007), the Court analyzed whether the Due Process Clause allows punitive damages to be awarded against a non-party. In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003), the Court held that "[a] defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *Id.* at 422 ("Nor, as a general rule, does a State have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction."). Neither of these cases mention depecage, let alone whether it would counsel in favor of applying different states' laws on compensatory and punitive damages in cases similar to this one. Plaintiff takes the Court's statements that punitive damages must be for harm caused to plaintiff out-of-context. The Supreme Court precedent cited by plaintiff regarding due process limitations is inapplicable to the choice-of-law question at issue here.

### III.     Plaintiff Has Conceded That New Jersey Law Would Bar Punitive Damages.

Although plaintiff argued that Missouri law should apply to punitive damages, plaintiff conceded that, if applicable, New Jersey law would preclude punitive damages. *See* Pl's Opp'n 9 ("[P]unitive damages may not be available under New Jersey law"). Plaintiff likewise failed to counter NPC's claim that New Jersey law precludes recovery of punitive damages, and has therefore waived any contention that New Jersey law does not prohibit her recovery of punitive damages.

Moreover, even if plaintiff attempts to deny this concession, and her failure to address the argument in her Opposition is not deemed a waiver, this Court should reject any contention that New Jersey law does not bar punitive damages in this case. A New Jersey statute addressing the availability of punitive damages provides: "Punitive damages shall not be awarded if a drug" which is alleged to have "caused the claimant's harm was subject to premarket approval . . . by

the federal Food and Drug Administration . . . and was approved . . . ." N.J. Stat. Ann. § 2A:58C-5c (West 2011). Plaintiff does not dispute that if this Court were to apply this provision of New Jersey law – as it should – the one exception to this narrow avenue to recover punitive damages is preempted and punitive damages are unavailable. *See McDarby v. Merck & Co.*, 949 A.2d 223 (N.J. Super. Ct. App. Div. 2008), *appeal dismissed as improvidently granted*, 200 N.J. 267 (2009); *see also Bessemer v. Novartis Pharms. Corp.*, No. MID-L-1835-08, at 37 (N.J. Super. Ct. Law Div. Apr. 30, 2010) (Exhibit 2 to NPC's Opening Brief, ECF 39) . Because there can be no dispute that N.J. Stat. Ann. § 2A:58C-5c and the New Jersey case law precluding plaintiffs from pursuing punitive damages in prescription drug cases address the ***issue of punitive damages***, these key provisions of New Jersey punitive damages law cannot be ignored and hence preclude plaintiff from pursuing punitive damages at trial.

## CONCLUSION

For the foregoing reasons, this Court should apply New Jersey law to the issue of punitive damages and hold that they are thus unavailable in this case.

June 9, 2011  Respectfully submitted,

/s/ Katharine R. Latimer
Katharine R. Latimer (*admitted pro hac vice*)
(klatimer@hollingsworthllp.com)
Robert E. Johnston (*admitted pro hac vice*)
(rjohnston@hollingsworthllp.com)
   HOLLINGSWORTH LLP
   1350 I Street, N.W.
   Washington, DC  20005
   Telephone:  (202) 898-5800
   Facsimile:  (202) 682-1639

Deirdre C. Gallagher (State Bar #6195451)
(dgallagher@foleymansfield.com)
   FOLEY & MANSFIELD, PLLP
   1001 Highlands Plaza Dr. West, Suite 400
   St. Louis, MO  63110
   Telephone:  (314) 925-5700
   Facsimile:  (314) 925-5701

*Attorneys for Defendant*
*Novartis Pharmaceuticals Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 9th day of June 2011 served a true and correct copy of the foregoing Novartis Pharmaceuticals Corporation's Reply Suggestion in Support of Motion to Apply New Jersey's Punitive Damages Law and to Preclude Punitive Damages, by operation of the Court's Electronic Case Filing System:

Bart T. Valad, Esq.
John J. Vecchione, Esq.
Valad and Vecchione, PLLC
3863 Plaza Drive
Fairfax, VA 22030
(703) 352-4800

Roger G. Brown, Esq.
Roger G. Brown & Associates
216 East McCarty Street
Jefferson City, MO 65101-2960
(573) 634-8501

/s/ Deirdre C. Gallagher
Deirdre C. Gallagher